UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD SWINTEK, ) | |
| ) | Case No. 21-cv-3079 |
| Plaintiff, ) | |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| THOMAS DART, in his official capacity ) | |
| as Sheriff of Cook County, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

In his second amended complaint, plaintiff Ronald Swintek seeks review of defendant Cook County Sheriff's Merit Board's decision to terminate his employment as a Correctional Officer with the Cook County Sheriff's Office. He also brings a First Amendment retaliation claim based on his termination. Before the Court is defendants' motion for judgment on the pleadings as to Swintek's First Amendment retaliation claim under Federal Rule of Procedure 12(c). For the following reasons, the Court denies defendants' motion.

**Background**

On August 1, 2018, the Sheriff's Office filed an internal complaint to the Cook County Sheriff's Merit Board against Swintek based on his conduct that occurred from August 2016 until July 2017. During that time period, Swintek posted numerous disrespectful comments and photographs denigrating the Muslim faith on his Facebook account under the moniker "Ivan Stalin." For example, one comment stated: "When are people going to understand Moslems [sic] are not part of America. They do not want to be part of America [and] their only goal is to destroy and conquer America. And the only reason that is [sic] because we will not bow down to Ali Baba and his pedophile Mohammed." Swintek also posted: "I swear to God I will never bend to my knees for Allah" or "his bitch Mohammed." Other posts include, "God bless Israel" may "they

continue to kill muslims this worlds [sic] real enemy" and "Thank God we have a president that is worried about American [sic]. And Americans. That Will fight to protect us from filthy Muslims." In his second amended complaint, Swintek alleges that he made these posts while sharing articles about activities of ISIS in the Middle East, including articles discussing the destruction of Christian artifacts and that ISIS attacked and killed of Christians. Meanwhile, it is undisputed that Swintek posted these comments on Facebook when he was off-duty.

On January 21, 2021, the Board concluded Swintek's conduct violated the Rules and Regulations and General Orders of the Cook County Sheriff's Office and the Cook County Department of Corrections, and therefore, terminated Swintek's employment. The Board specifically concluded Swintek violated the Sheriff's policy regarding discrimination, harassment, or intimidation of any person and that his actions reflected negatively on the Sheriff's Office.

**Legal Standard**

Rule 12(c) specifically states: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The "only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same." *Federated Mutual Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). "To survive a motion for judgment on the pleadings, 'a complaint must state a claim to relief that is plausible on its face.'" *Bishop v. Air Line Pilots Assoc., Int'l*, 900 F.3d 388, 397 (7th Cir. 2018) (citation omitted). When determining if a complaint states a plausible claim for relief, courts draw all facts and reasonable inferences in favor of the non-moving party. *ADM Alliance Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 746 (7th Cir. 2017). "A defendant filing a motion under Rule 12(b)(6) or 12(c) can base its motion on only 'the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial

notice.'" *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021) (citation omitted).

**Discussion**

In examining whether a public employee's speech is protected under the First Amendment, courts must first look to whether the employee spoke as a citizen on a matter of public concern. *Harnishfeger v. United States*, 943 F.3d 1105, 1113 (7th Cir. 2019). "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011) (internal citations and quotation marks omitted). When determining if statements constitute a matter of public concern, courts consider the content, form, and context of the public employee's speech. *Kubiak v. City of Chicago*, 810 F.3d 476, 483 (7th Cir. 2016). "Of these three considerations, content is the most important." *Meade v. Moraine Valley Cmty., Coll.*, 770 F.3d 680, 684 (7th Cir. 2014).

In response to defendants' motion, Swintek argues his statements against Muslims and the Islamic faith are not his personal opinions, but rather are a matter of public concern because he was sharing his religious and political responses to alarming online articles. Defendants, in turn, argue Swintek's statements did nothing to inform the public about issues of value or concern, but rather reflected his personal animosity toward the Islamic faith. *See City of San Diego v. Roe*, 543 U.S. 77, 84, 125 S.Ct. 521, 160 L.E.2d 410 (2004) (per curiam).

Viewing Swintek's allegations and all reasonable inferences in his favor, his comments, although offensive, concern political expression that Muslims seek to destroy America and religious expression, namely, that he will not join Islam. Moreover, his statement about the President protecting Americans concerns political speech. And, although his statements are distasteful, "[i]f there is a bedrock principle underlying the First Amendment, it is that the government may not

3

prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). Put differently, "[t]he right to free speech, of course, includes the right to attempt to persuade others to change their views, and may not be curtailed simply because the speaker's message may be offensive to his audience." *Hill v. Colorado,* 530 U.S. 703, 716, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). That said, although Swintek's First Amendment retaliation claim survives defendants' Rule 12(c) motion, discovery may reveal more information as to the form and content of his speech, as well as his motive, which is relevant to context. *See Kubiak*, 810 F.3d at 483.

Defendants next argue that even if Swintek's statements amount to a matter of public concern, he has failed the *Pickering* balancing test because his posts on Facebook undermined the legitimate interests of the Sheriff's Office, even though Swintek's statements were not directly related to his employment. Under *Pickering*, the Court must strike a balance between the interests of the public employee in commenting on matters of public concern and the public employer's interest in promoting the efficiency of the public services it performs. *Olendzki v. Rossi*, 765 F.3d 742, 746-47 (7th Cir. 2014) (citing *Pickering v. Board of Ed. of Twp. High Sch.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). When evaluating a public employee's interests, courts focus "on the effective functioning of the public employer's enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). Indeed, "[i]nterference with work, personnel relationships, or the speaker's job performance can detract from the public employer's function; avoiding such interference can be a strong state interest." *Id.*

There is no dispute that Swintek's speech occurred while he was off-duty, thus there is an important factual dispute prohibiting the Court from conducting the *Pickering* balancing test at this juncture. This dispute is whether Swintek identified himself by name and whether he was wearing a Cook County Department of Corrections hat in a photograph when he made the anti-Islamic

4

statements on Facebook. Whether Swintek identified himself and his workplace in these posts goes directly to whether he violated the Rules and Regulations and General Orders of the Cook County Sheriff's Office and the Cook County Department of Corrections, and ultimately to whether his speech detracted from his public employer's function. The Court therefore denies defendants' Rule 12(c) motion in this respect.

**Conclusion**

For these reasons, the Court denies defendants' Rule 12(c) motion for judgment on the pleadings as to plaintiff's First Amendment retaliation claim [43].

IT IS SO ORDERED.

Date: 9/22/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge